Good morning. May it please the Court, my name is Nancy Fellum, and I represent the petitioner in this matter. I'd like to begin today with a quote from the immigration judge's decision. With regard to the good moral character issue, I believe that's where this case turns. And indeed, that is where this case turns. We don't dispute that the REAL ID Act, in fact, does preclude judicial review in this Court of purely discretionary determinations. However, this Court does retain jurisdiction over questions of law and constitutional claims. Well, let's jump right to it. I think you cite Beltran-Torado. Correct. And I think the government doesn't really respond to that. And so I'll have some questions for the government on the applicability of that. But I'm assuming that your argument is that the Court used the wrong standard on moral turpitude. Our argument is first that, in fact, the Court did apply an incorrect standard, in fact, inserting a per se standard, effectively creating a new subparagraph 10 to 101F, in that the Court found below the trial court that the Court was precluded from finding good moral character where one had used a false social security number for any purpose whatsoever. So if it's not a matter of law, since moral turpitude would be a discretionary column, as the hardship would, you're out of luck, right? Right. We feel it is, as a matter of law, that, in fact, good moral character determinations are determinations that are made as a matter of law. As this Court has said in Kalaw, there are, in fact, nine per se categories under 101F where specific conduct is listed. And this Court has found that they do retain jurisdiction to review determinations of the per se categories. But this particular case, it's unclear from the immigration judge's decision whether he is finding ineligibility based on one of the per se categories in subparagraphs 1 through 9, or if, in fact, he is relying upon what I refer to as the residual clause of 101F, which says that for any reason not necessarily stated above, one can, the Court can find that one lacks good moral character. And, in fact, we're contending that, in this case, the immigration judge either, in fact, inserted a new per se category, which you do have jurisdiction to review, or that the immigration judge, in fact, relied upon this catch-all or residual clause, if I may call it that, and wrongfully determined that the respondent or petitioner had engaged in criminal conduct and was, therefore, precluded from showing good moral character. 101F refers to this. Well, the per se, the new per se that you're talking about, is that you have a, you don't have a, you falsely use a Social Security card, right? Correct. For any purpose whatsoever. The immigration judge repeatedly referred to the use of the Social Security number, the use to get a job, the use to get credit cards, the use to get bank accounts, the use to buy a home, the use to file income taxes. And in Beltran-Toronto, as the Court knows, there, in fact, is no finding that it is a crime of moral turpitude to use a Social Security number for an unlawful purpose. And these facts are much more favorable than in Beltran. My client invented the Social Security number when he was 16 years old. Well, he made one up, and then he eventually got one, right? That's correct. And he only used those two. The one he made up when he was 16, and the one that he legitimately obtained after he was granted employment authorization during the pendency of these very proceedings. There was something incorporated in there, too, though, about his maybe having unreported income or too much money or that. Do you want to address that? It's very interesting when you read the immigration judge's decision and you read the transcript of the hearing below. The immigration judge referred erroneously to underreporting of income and expressed incredulity that someone could, in fact, support a family of five when they earned between $17,000 and $25,000 a year and, in fact, have in the bank over $100,000. But, in fact, the respondent or the petitioner explained that he had recently sold a home, that he had deposited the funds into a bank account, and, obviously, he was able to live based on the profit that he had earned in selling the house. And he further explained that other monies that he had in the bank were based upon a loan that he had taken out in order to fix up another home for resale. So I... Ms. Stone, Ms. Stone. Your bottom line would be he was not charged with a crime regarding the money that was in the bank. There was no obligation on him to demonstrate it. He had a bank book. It showed the money. He indicated what he had earned. And there was some speculation on the part of the judge as to how anybody could have that much money. But that isn't sufficient to carry the case. No, and, in fact, he... He would argue, I suppose. And, in fact, he reported... Somebody would agree with you. Over $7,000 in interest income, and, obviously, someone who's trying to conceal assets wouldn't... It may have been. So you don't want to be too strong. He may very well have been. But the question is whether the record shows that he was. And it doesn't, does it? No, it doesn't. And this raises another issue and another basis on which I think the court... Well, before I get to him, Ms. Stone, you know, I have a more basic problem with this case, and that is that the IJ, didn't he also make a determination based upon the hardship issue? Well, that's a very interesting question. And our position is that, in fact, the immigration judge pre-terminated that issue. And I'd like to quote from the immigration judge's decision. What page? Page 14. Page 14? Of the immigration judge's decision. Yes. Which in the administrative record is page 116. Yeah. This case doesn't fall on the hardship issue. This case falls on the good moral character issue. We filed a motion to remand with additional evidence of the rape and molestation. That's a different problem. There is that sense there, but he does, you know, go quite a bit into the lack of hardship issue, right, or lack of showing of hardship, doesn't he? Well, to be very honest, I don't see a great discussion of the hardship factors in here. In fact, I see very little discussion. Our position is that he effectively pre-terminated that good moral character, I'm sorry, the hardship issue. And I believe that the government is in accord with that because when we filed the motion to remand, the government responded that they objected because there was no issue and no reason to review additional evidence of hardship because the case was decided on good moral character grounds. And that's also a matter of the administrative record, the government's position. All right. And the IJ never ruled on the or the agency never ruled on the motion to reopen, right? They did not. They entered one ruling without opinion, as you know, and that ruling came after the filing of the motion to remand. So we can only assume that they were aware of the additional corroborating evidence and that they chose not to issue an opinion regarding that as well. All right. So the best that you could hope for, correct me if I'm wrong, would be to remand this for the court to look at moral character in light of Beltran. Correct. And the court still could decide he doesn't have – that your client doesn't have good moral character, but on correct grounds, consider Beltran. That's exactly. And then if the issue was that the court didn't get to hardship, then the court could get to hardship. But if the court had gotten – if – I'm sort of inclined to agree with you on that the court didn't really decide the hardship issue because the court said it turned on good moral character. So you've got to be – so that's what you're asking? That's what we're asking, Your Honor. All right. Do you want to reserve the balance of your time? I would, please. May it please the Court. My name is Ernesto Molina. I am from the U.S. Department of Justice's Office of Immigration Litigation, and I represent the respondent, Alberto Gonzalez, in this case. In this case, the court addresses the case of an alien who failed to prove to an immigration judge that he was a good moral character for – Well, why don't you – you don't ever talk about Beltran Tirado. It seems to be the alligator in the bathtub that you're looking the other direction on. So I need to know where you're coming from on that. Oh, certainly, Your Honor. I can explain the government's position with regard to Beltran very clearly. And that is the government orders that this court's decision is governed by Beltran, but the court needs to understand what happened in Beltran. In Beltran, the court looked at an alien who was seeking suspension of deportation and registry, which is under INA Section 249, suspension of deportation is the predecessor to cancellation of removal, and was denied that type of relief because of a lack of good moral character on discretionary grounds. That was the way the board decided. The board looked to the fraudulent use of a Social Security number in considering that question, the question of good moral character, and held that that's a factor against, and that as a result, the alien in Beltran did not have good moral character. Now, the case came before this court, and the court looked at this under the transition rules of the INA, which were the jurisdictional rules in place before the present rules. This is under IRERA 309C4E. And the court said this. Well, with regard to suspension of deportation, the good moral character ground was a discretionary decision. Therefore, this court lacks jurisdiction to look at that question, and the court put that aside. With regard to registry, however, the court noted that INA Section 249 was not a statute listed in then 309C4E. Therefore, the court could review the registry question and had jurisdiction. Excuse me. Now we come to this case. In this case, the court has a cancellation of removal decision under INA 240A. That is a statute specifically listed in 242A2B1. Therefore, it is invoked. If it's a discretionary decision, as this good moral character decision was, then the court's jurisdiction is at an end by its own precedent. Your bottom line is we lack jurisdiction to review when the case is over? That is basically it, Your Honor. What about the question I asked your opponent about what I thought was an alternative basis to deny relief, which was a finding of lack of hardship? Well, Your Honor, the government's brief does lay out the hardship issue. And the government has to admit that there are two points in the immigration judge's decision that strongly suggest the immigration judge was not firmly deciding the question in her mind. That is, first, at page 110 of the administrative record, which is the eighth page of the immigration judge's decision. Page 110 of the IJ decision? No, of the administrative record. Oh, the record. Okay. Page 8 of the immigration judge's decision. Where he says what? I believe it's the first full paragraph at the top. I believe this case turns on good moral character. That seems to suggest his focus is the good moral character finding. That's probably some other page. But anyway, what about this passage on AR 115, right at the top? He says, I would find that the respondents have failed to meet their burden of proof for hardship because the hardship evidence in this case does not, in the court's view, show extreme unusual hardship to the child. Isn't that a finding that they're not they don't meet the extreme and unusual hardship requirement? He does seem to go into that, Your Honor, and go to that extent. If it is, then we shouldn't be reviewing the moral character issue even, right? Because we can't tell on which basis the BIA affirmed. That is not correct. Are you familiar with the Lanza case? I'm very familiar with the Lanza case. Isn't this a Lanza issue? I'm familiar with the Lanza issue, but this is not one, Your Honor. Why? He's got two alternative bases, right? Not quite. First, with regard to the language that the court has just quoted from the immigration judges, realize that this is an oral decision, which means the judge is speaking in Latin. Almost all oral decisions. I beg your pardon, Your Honor. I'll explain what I mean. Note that that's the one place that the immigration says would find. That seemed to be conditional, not making the express finding. But immediately after the language the court just quoted, he says, but that doesn't matter because this case turns on the good moral character finding. So does that mean that if we remand, you agree that the extreme and unusual hardship issue is out of the case because he hasn't found that and he can't revisit it, it only goes back on good moral character? Do you agree to that? No, Your Honor, I can't do that. Why not? Because there's been no finding with regard to extreme hardship or to the hardship. If this case goes back, for example. I know, but he had the chance to find it and he didn't. You say he didn't find it. Yes, but that's because, Your Honor, under Inez v. Baga-Mazba, the Supreme Court explained that an agency is qualified to dispose of the case on any grounds it finds reasonable. So you sort of – you essentially agree with Appellant on the issue that the court decided it on moral character and may have opined on hardship, but didn't actually determine that. That's correct. When this case goes back on remand, it will go back to the Board of Immigration Appeals, which streamlined the review of the decision, and it will be up to the Board to decide whether it wants to decide. What do you do about the motion to reopen, then? What about it, Your Honor? Well, they didn't address that, right? Well, they haven't addressed it yet. Well, why not? I don't know, Your Honor. The Board of Immigration Appeals gets thousands of motions to reopen. That one's turn just has not come up. Aren't they required to address it? They're not required to – they will eventually address it, yes. No, no, no. Aren't they required to address it when it's made? No, Your Honor. Under Inez v. Baga-Mazba, the Supreme Court explained that the agency can dispose of a case on any ground it deems appropriate and does not have to address other elements. Are you familiar with our case, Moosissian? Moosissian? Beg your honor, that was an asylum and – No, but it says the BIA must address and rule upon a motion to reopen and give a specific cause and reason for the grant or denial. They didn't do that. Oh, I'm sorry, Your Honor. On the motion to reopen. I see. I see what you're saying. Your Honor, technically the motion to reopen that was before the court – before the Board of Immigration Appeals was a motion to remand. By regulation at 8 CFR 1003.2 C – and I can't remember the subparagraph, Your Honor. It specifies that the motion to remand can simply be – Motion to reopen. The motion to reopen is treated as a motion to remand if the appeal is pending and can simply be addressed in the decision if it needs to. But because here we have the only decision that is issued by the immigration judge, being the good moral character finding, and the board streamlining that finding under this court's decision in Falcone-Karish v. Ashcroft, this court is going to look to the immigration judge decision. That's the only basis for any denial in this case. Well, how do we know – I know as I read you that portion about – that you're familiar with, the IJ's decision that says, I would find so forth or it doesn't meet the requirements. How do we know that, you know, the board didn't rest its decision on that finding? Because that was not a finding, Your Honor. As the government has argued, that was the immigration judge offering some discussion of it, but not making the ultimate finding. Well, did he make some other finding on hardship? No, only with respect to good moral character. That's the only firm ground in the immigration judge's decision. You may want to, since your time is running down, you may want to tell us why we don't need to do what she's asked us to do. You understand what she said. You said no jurisdiction, it's over. She's made a statement. Assume we don't agree with you on the no jurisdiction. Why should we not do what she said? If the court finds that it does have jurisdiction, then I'm afraid to say that Mr. Jimenez still loses. Because in this case, at page 113 of the immigration judge's decision, you'll see the court discusses the fact that Mr. Jimenez, in addition to improperly using a Social Security number, made a false claim regarding dependence on his tax returns, and the court has the gum, I believe it's called a gum sheet, that the government submitted regarding Chattie v. Ashcroft, where this court has already held that tax fraud, for the purpose of getting a tax benefit, such as Mr. Jimenez's case, a lower tax bracket or a deduction, and to deprive the government of funds, constitutes a crime involving moral turpitude. That is at page 113. And if this court has jurisdiction to review the question of law, then that supporting, that finding... That's not a finding. Yes, it is, Your Honor. It just says to respond and testify. What's that? It just says respond and testify to so-and-so, and he said so-and-so. Yes. And it appears... This is in the court's discussion of the good moral character finding. No, but you're saying this is even less specific than what you're saying the other part is not a finding, when he says, I would find. No, Your Honor. He doesn't even say, I would find here. No, that's the purpose of page 110, Your Honor, where the court says, my findings are not based on any one particular element, it is based on all of the following elements. This is one of those elements, Your Honor. Therefore, this was part of the immigration judge's finding. It's not to be denied that Mr. Jimenez admitted that he claimed the penance were not his. If that's a part of a finding, why isn't page 13 part of his finding? Because, again, Your Honor, at 110, the court says, this case turns on good moral character, and I find good moral character for all of the following reasons, not just any one of these reasons, that follows. Then the court goes on to say... He also says on that same page, he says, I would find... That's right. A conditional statement, not a firm finding. That the Petitioner is not a person of good moral character. That the same language he uses with the other one. Look at page 110, the first full paragraph, line 3. I would find is not a person of good moral character for the following reason. I would find, the same language he uses on three pages later. Right. But that, again... And you're saying that I would find is not a finding. Except you're not looking at the beginning of that sentence, Your Honor. I find this case turns on good moral character because I would find this. Done. Well, you can't say I would find is a finding in one case but not a finding in the other. However, with regard to the issue of good moral character, I believe that's where this case turns. That's the court saying, the fulcrum of this case is here. I would make that finding. That language is not found in the other section. And, in fact, the other section is immediately followed with, but that doesn't matter because this case doesn't turn on that issue. The court has twice indicated that the fulcrum of this case is the good moral character finding. It says for various reasons, not just one, and one of those reasons is there was fraud committed on tax returns, which this court, in the Chatty decision, has already ruled is a crime involving moral turpitude. You know what surprises me, Mr. Molina? Apparently, this was an important part of the argument, and you blew it. Your time was up, and you hadn't reached it. And now you're responding. Yes, it was an important part of the argument. Oh, Your Honor, I'm sorry, Your Honor. There's no time. You can do with it as you will. I would say, in your defense, you have to answer some of our questions. I would suggest that I've always been taught, Your Honor, that this is the court's time, not the government's time. We're here for the court's benefit. If the court wants an answer, the Office of Immigration Litigation is here to provide that answer. I just have one quick question for you. If we disagreed that if we said the court decided this on the Social Security issue and we said, you know, you were wrong as a matter of law in just deciding it on that and sent it back on that, it would be your position that the hardship was never resolved. So the court would have to go back and do the moral character and either do it correctly. And if the court didn't feel that the moral character was an issue, then get to the hardship, right? That is correct, Your Honor. And, of course, and just to be clear, Your Honor, the board could also say, because it can decide the hardship issue de novo, that it's not going to go to the good moral character issue because this case falls on hardship. The proper order for the court would be we remand for the board to consider this consistent with this decision. It falls on fraud. If that were our opinion. Exactly, Your Honor. I'd just like to ask you a question for information. You submitted this CARDI citation for what purpose or on what point? That tax fraud to gain a benefit is a crime involving moral turpitude. All right. I'm sorry, I didn't want to provide too much argument from the government. Thank you. Thank you. You can start wherever you want, but at some point you want to get to his tax fraud allegation, don't you? I'm about to get to it right now because, in fact, I don't think that the record would support a finding of tax fraud at all. In fact, the claiming of unauthorized dependence is not supported by the record. Mr. Jimenez married his wife in 1991. He filed a tax return in 1990 not listing her as his spouse, listing her as a dependent in the other dependent section of the tax return. He never claimed that he was married to her in 1990. When he filed the tax return in 1991, he did, in fact, say he was married to her because he was. They had married. I mean, don't you have to in order to prevail? I mean, let's assume that, you know, if this is a discretionary call, we're not going to reweigh all of that whether it was enough or not. Doesn't it have to be the case that the I.J. decided it on the Social Security was moral turpitude, and that's what the court decided and they didn't correctly consider Beltone Dorado? That's a succinct. Because if the court had not said it was the Social Security alone and said other things in terms of, well, I see problems with your or it doesn't, I'm seeing discrepancies in your income, I'm seeing all that, then you'd be out of luck if the court considered all of those because the court could on a discretionary call find that, right? That's correct. But, in effect, we're saying that the judge did create a per se rule on Social Security. That's correct. And that, therefore, we didn't get to examine the rest of the good moral character issues. And if this goes back, if it were on that just to consider Beltone Dorado, that by no stretch of the imagination means you win. I mean, the court could still reconstruct moral character or the court could go to the hardship and that would just be whatever they decided to do, right? Right. And hopefully they would, in fact, review the evidence submitted with the motion to remand at that time. Okay. Thank you. If there are no other questions from the panel, this matter would stand submitted. Thank you both for your argument.
judges: Farris, Tashima, Callahan